IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


TERESA BELL                                                              PLAINTIFF

V.                              CASE NO. 5:14-CV-05046

BLUE CROSS AND BLUE SHIELD
OF OKLAHOMA, a Division of HEALTH CARE
SERVICE CORPORATION, a Mutual Legal
Reserve Company; and BLUE CROSS AND
BLUE SHIELD OF TEXAS, a Division of HEALTH
CARE SERVICE CORPORATION, a Mutual
Legal Reserve Company                                                    DEFENDANTS


<u>OPINION AND ORDER</u>

Now before the Court are Plaintiff Teresa Bell's Motion to Remand (Doc. 10) and

Defendants Blue Cross and Blue Shield of Oklahoma  ("BCBS-OK") and Blue Cross and

Blue Shield of Texas's ("BCBS-TX") Motion for Judgment on the Pleadings (Doc. 14).

For the following reasons, Plaintiff's Motion to Remand (Doc. 10) is **DENIED**, and

Defendants' Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**.

## I.  BACKGROUND

Bell seeks to determine the rights of the parties with respect to Defendants'

subrogation claim against her.  In October of 2010, Bell, who worked as a registered nurse

for the Veterans Affairs Hospital in Tulsa, Oklahoma, sustained personal injuries and

medical expenses as a result of a motor vehicle accident to which she was not at fault.

Bell was insured through a government-sponsored benefits plan ("Plan") available only to

federal employees and administered by BCBS-OK and BCBS-TX.   The Plan paid

$33,014.01 in medical benefits on Bell's behalf.   Bell alleges this amount does not

adequately compensate her for all injuries, damages, and attorney fees, which according to Bell total in excess of $100,000.00.

Bell negotiated a compromise settlement[1] with Progressive Insurance Company ("Progressive"), the third-party carrier that insured the tortfeasor responsible for her car accident.  Before Bell received her settlement check, BCBS-OK and BCBS-TX intervened and made a claim for subrogation, maintaining that the terms and conditions of Bell's health benefits Plan stipulated that any money she received from a third party was required to be reimbursed to the Plan, regardless of whether Bell had been "made whole," for her injuries.

The Plan's Statement of Benefits states in relevant part:

> If another person or entity, through an act or omission, causes you to suffer an injury or illness, and if we paid benefits for that injury or illness, you must agree to the provisions listed below.  In addition, if you are injured and no other person or entity is responsible but you receive (or are entitled to) a recovery from another source, and if we paid benefits for that injury, you must agree to the following provisions:
>
> - All recoveries you or your representatives obtain (whether by lawsuit, settlement, insurance or benefit program claims, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid . . .
>
> - We are entitled under our right of recovery to be reimbursed for our benefit payments even if you are not "made whole" for all of your damages in the recoveries that you receive.  Our right of recovery is not subject to reduction for attorneys' fees and costs under the "common fund" or any other doctrine.

(Doc. 16, p. 16; Doc. 5-10, p. 138).

---

[1]  The dollar amount of the settlement was not disclosed to the Court by either party.

Despite this provision, Bell brought suit against BCBS-OK and BCBS-TX in state court, contending that she should not be required to reimburse the Plan with her third-party settlement monies.   She points out that under Arkansas law, an insurer may only be reimbursed *after* the insured has been "wholly compensated for his injuries."   *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 189 (2001).   Bell claims she was not "made whole" and that the subrogation lien is therefore invalid, void, and unenforceable as a matter of law.

The made-whole doctrine in Arkansas is one of equity.   Bell argues that the combined sum received from the tortfeasor and the benefits paid by the Plan is less than the total amount of her injuries and damages.   According to Bell, she should only be required to reimburse an amount, if any, by which her combined benefits and settlement proceeds exceed her actual loss.   The Arkansas Supreme Court likens this concept to unjust enrichment.    "An insured should not recover more than that which fully compensates, and an insurer should not recover any payments that should rightfully go to the insured so that . . . she is fully compensated. *S. Farm Bureau Cas. Ins. Co. v. Tallant*, 362 Ark. 17, 24 (2005); *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 28 (1992) ("Thus, while the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages.").

Under Arkansas law, an insurer cannot unilaterally assert and recover benefits through the subrogation provisions of its policy language.   *Eastwood v. S. Farm Bureau Cas. Ins. Co.*, 291 F.R.D. 273, 277 (W.D. Ark. 2013) ("[A]n insurance company seeking

subrogation is required to secure either a legal determination by a court that the insured was made whole or an agreement with the insured that he was made whole *prior to* collecting subrogation.") (analyzing *Riley v. State Farm Mut. Auto. Ins. Co.*, 2011 Ark. 256 (2011)) (emphasis in original).  Bell therefore contends, applying Arkansas law,[2] that a court must determine whether she has been made whole by the combined amount of Plan benefits and settlement monies.

BCBS-OK and BCBS-TX removed this case to federal court on February 2, 2014 (Doc. 1), citing the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).  In *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1233 (8th Cir. 2012), the Eighth Circuit held that removal pursuant to this Statute was appropriate in a case involving an insurance plan governed by the Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. §8901 *et seq.*, and a private insurer's subrogation claims against an insured.  According to *Jacks*, federal jurisdiction is proper in a case such as the one at bar because the "act of pursuing subrogation and reimbursement from a plaintiff" is "sufficiently under the control of a federal officer or agency for purposes of federal officer removal."  *Id.* at 1230.

Bell contends in her Motion to Remand that the *Jacks* holding has been undermined by the recent Missouri Supreme Court decision in *Nevils v. Group Health Plan, Inc.*, 418 S.W. 3d 451 (Mo. 2014) (en banc), and federal jurisdiction over the subject matter of this case is no longer proper.

Defendants have separately moved for judgment as a matter of law.  BCBS-OK and BCBS-TX take the position that Arkansas law does not control the substance of this

---

[2]  No argument has been advanced for a similar or analogous equitable principle under federal law.

-4-

dispute.  They contend that since Bell's insurance Plan is governed by the FEHBA, federal law preempts Bell's state law claims.  Although Bell disputes federal preemption, she agrees there are no material facts in dispute.  The Court will address first the applicability of the Federal Officer Removal Statute on the question of remand, and then render judgment on the pleadings.

## II.  DISCUSSION

### A.  Motion to Remand

Bell argues that this case should be remanded to state court, primarily because of the Missouri Supreme Court's holding in *Nevils*, 418 S.W. 3d at 451.  *Nevils*, however, only discusses the substantive issue of whether the FEHBA may preempt Missouri law and not the issue of subject-matter jurisdiction.  Accordingly, *Nevils* is not helpful in determining whether jurisdiction is proper in this Court.

The burden of proof on a motion to remand lies with the party opposing the motion. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002).  In order to remain in federal court, BCBS-OK and BCBS-TX must demonstrate that the Federal Officer Removal Statute applies to the facts of this case and permits removal.  To do this, Defendants must establish three things: (1) in seeking subrogation from Bell, BCBS-OK and BCBS-TX acted under the direction of a federal officer; (2) there was a causal connection between Defendants' actions and the official authority; and (3) Defendants have a colorable federal defense.  *Jacks*, 701 F.3d at 1230; 28 U.S.C. § 1442(a)(1).

The Eighth Circuit's opinion in *Jacks* explains in detail why the Federal Officer Removal Statute applies when a private insurance company litigates a potential

-5-

subrogation claim arising from an FEHBA contract with the Office of Personnel Management ("OPM").   In the *Jacks* case, a Missouri resident was involved in a motor vehicle accident and received benefits from Blue Cross Blue Shield of Kansas City ("BCBS-KC"), which administered an FEHBA benefits plan for federal workers on behalf of OPM. *Jacks*, 701 F.3d at 1228.  Jacks contended that the benefits she received through her BCBS-KC plan were insufficient to make her whole for her injuries.  She negotiated a separate settlement with the insurer of the tortfeasor.  Before she could be paid, however, BCBS-KC asserted a lien on the third-party settlement, claiming entitlement to subrogation. Jacks brought suit against BCBS-KC in state court, alleging Missouri state-law violations, and BCBS-KC removed, citing the Federal Officer Removal Statute.  Thus, the facts in *Jacks* are nearly identical to those at issue in the case at bar.

The Court of Appeals in *Jacks* affirmed the district court's decision to allow the litigation to proceed in a federal forum, pursuant to the Federal Officer Removal Statute. Applying the same reasoning here, it appears that BCBS-OK and BCBS-TX have properly removed this case.  As to the first prong of the Statute's requirements, it is clear that BCBS-OK and BCBS-TX "act under" the direction of a federal officer because their "assistance to the federal government in all respects in no way can be described as simple compliance with a federal law."  *Id.* at 1234.   Instead, these private insurers, like those in *Jacks*, "help the government fulfill the basic task of establishing a health benefits program for federal employees."  *Id.* at 1233.

Turning to the second prong of the Statute's requirements, there is a causal connection between BCBS-OK and BCBS-TX's actions in administering Bell's Plan and

OPM, the official governmental authority.  The *Jacks* case explains how in health plans such as Bell's, OPM exerts "direct and extensive control over these benefit contracts under the FEHBA."  *Id.*  Moreover, "OPM is responsible for the overall administration of the program while sharing the day-to-day operating responsibilities with the employing agencies and the insurance carriers." *Id.* (internal quotation and citations omitted).  "[T]he federal government maintains the funds for all carriers participating under the FEHBA," *id.* at 1234-35, and FEHBA's regulations state that any judicial action "must be brought against OPM and not against the carrier." 5 C.F.R. § 890.107(c).  All of these factors evidence the extent of the government's authority in this sort of contractual relationship.

As the *Jacks* court explained, "FEHBA program carriers contracting with the federal government to provide health care insurance for federal employees are not unrelated and wholly separate business entities merely doing business in a highly regulated arena, but rather conduct business under the delegation of the federal government."  *Id.* at 1234.  By extension, it follows that BCBS-OK and BCBS-TX have  pursued subrogation claims against Bell because OPM directed them to do so, according to the provisions of Bell's health benefits Plan.

The third prong of the Statute is also satisfied here, as Defendants have asserted not one, but three colorable federal defenses.  The first defense is that Bell's claims are preempted by the FEHBA's express preemption provision.  The same defense was asserted in *Jacks*, and there the court found it to be colorable.  *Id.* at 1235 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 697-98 (2006)).  For purposes of federal jurisdiction analysis, only one colorable defense is necessary to meet the

requirements of § 1442(a)(1); therefore, the Court will not analyze the other two defenses claimed by Defendants.

Because all prerequisites to establishing federal subject-matter jurisdiction have been satisfied by Defendants, the Court finds that removal was proper, and Bell's Motion to Remand (Doc. 10) is **DENIED**.

### B. Defendants' Motion for Judgment on the Pleadings

Now that the Court has determined that this dispute is appropriately within the Court's jurisdiction, the next issue to address is Defendant's Motion for Judgment on the Pleadings. Such a motion is contemplated by Federal Rule of Civil Procedure 12(c), and is, for all practical purposes, to be treated just as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). In evaluating a motion for judgment on the pleadings, a court must accept as true all of the factual allegations contained in a complaint and review the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

Bell concedes that "[t]he relevant facts of how this case got to this point are not in dispute" (Doc. 21, p. 2); but contends "there is a dispute of material fact and law as to how this subrogation matter should be resolved." *Id.* at p. 3. After conducting a thorough review of the pleadings and the parties' briefing, the Court finds that there are no relevant, disputed facts at issue here. Rather, the matter of "how this subrogation matter should be

-8-

resolved" is purely a question of law.   Accordingly, judgment on the pleadings is appropriate.

BCBS-OK and BCBS-TX advance three reasons why their Motion for Judgment on the Pleadings should be granted.  The first reason is that Arkansas' made-whole law is preempted by the FEHBA's express preemption provision.  The second reason is that the made-whole doctrine has been displaced by federal common law.  The third reason is that sovereign immunity bars Bell's state law claims.  Because the Court finds that judgment on the pleadings is warranted due to the first reason alone—that the FEHBA's express preemption provision supersedes Arkansas' "made-whole" doctrine—the other two possible bases for judgment will not be addressed.

The Eighth Circuit has held that express preemption pursuant to the FEHBA is a colorable defense in a subrogation dispute.  *Jacks*, 701 F.3d at 1235 (citing *Empire*, 547 U.S. at 697-98).  The FEHBA states that "the terms of any contract  . . . which relate to the nature, provision, or extent of coverage or benefits (including with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C.  § 8902(m)(1).  Defendants maintain, and Bell does not dispute, that according to the FEHBA Plan at issue here, all reimbursement and subrogation recoveries obtained by the carrier must be returned to the United States Treasury.  *See* Doc. 15, p. 18.  Any money left in the designated Treasury fund at the end of the year is used in OPM's discretion to reduce the cost of benefits or to "increase the benefits provided by . . . the plan."  5 U.S.C. § 8909(b); 5 C.F.R. § 890.503(c)(2).

The FEHBA's express preemption provision provides as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1).  The FEHBA does not, however, address the manner in which a carrier may collect subrogation or reimbursement on behalf of OPM.  Instead, the insurance contract itself contains such language.  For example, in Bell's contract, the subrogation provision is as follows:

> (a) The Carrier's subrogation rights, procedures and policies, including recovery rights, shall be in accordance with the provisions of the agreed upon [Statement of Benefits], which is incorporated in this Contract . . . .

(Doc. 5-1, p. 31; Doc. 5-6, p. 40).  The Statement of Benefits entitles the carrier to be reimbursed for its benefit payments even if the insured is not made whole for damages. (Doc. 16, p. 16; Doc. 5-10, p. 138).

For preemption to apply under the FEHBA, there are two conditions precedent listed in § 8902(m)(1).  First, the contract's terms must "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)"; and, second, the state law at issue must "relate[ ] to health insurance or plans."  5 U.S.C. § 8902(m)(1).  The Court will focus its analysis on the first condition, as the parties agree that the second condition has been met here, and only the first condition is in dispute.  *See* Doc. 23, p. 8; Doc. 21, p. 3.

Neither the Court of Appeals nor any district court in the Eighth Circuit has considered the interpretation of the FEHBA's preemption clause.  This issue is therefore somewhat of an open question for this Court, as the Supreme Court in *Empire* determined that the clause was susceptible to more than one possible reading.  *See Empire*, 547 U.S.

-10-

at 697-98 (observing that the terms of an FEHBA contract could be interpreted as either "relating to the *beneficiary's* entitlement (or lack thereof) to Plan payments for certain health-care services" or "to the carrier's postpayment right to reimbursement," as both are "plausible constructions") (emphasis in original).  Because the term "relate to," as it appears in the FEHBA, is open to interpretation, it remains for the Court to decide whether the contract at issue in Bell's case contains a subrogation provision that either relates—or does not relate—to coverage or benefits.

Bell's cited authority in support of her position on preemption proceeds from two state-court opinions, one from the Arizona Court of Appeals—*Kobold v. Aetna Life Ins. Co.*, 309 P.3d 924 (Ariz. Ct. App. 2013)—and one from the Missouri Supreme Court—*Nevils*, 418 S.W. 3d at 451.  In *Kobold*, the court determined that Arizona law was not preempted by the FEHBA in a personal injury case involving a carrier's claim for subrogation.  The *Kobold* court found that "the fact that [the carrier's] contractual right to reimbursement is triggered by the payment of benefits does not mean that it 'relate[s] to the nature, provision, or extent of' benefits," as "[t]he 'benefits' to which Kobold was entitled under the Plan were not dependent on recovery from a third party."  309 P.3d at 928.

Similarly, the court in *Nevils* found that "subrogation necessarily occurs after the 'coverage' issue is resolved, so subrogation cannot affect the extent, nature or provision of insurance 'coverage.'" 418 S.W. 3d at 456.  *Nevils* stands for the proposition, therefore, that a claim for subrogation by the carrier cannot "relate to the nature, provision, or extent of coverage or benefits" because a claim for subrogation is too remote in time, having been made well after the carrier's initial payment of benefits.  *Id.*

-11-

Both the *Kobold* and *Nevils* courts went so far as to hold that the connection between reimbursement and benefits must be "direct and immediate" in order for subrogation to "relate to . . . coverage or benefits" pursuant to the FEHBA and trigger federal preemption. *See Kobold*, 309 P.3d at 927; *Nevils*, 418 S.W. 3d at 456.  Both courts asserted that unless such a temporal requirement were imposed, "for all practical purposes pre-emption would never run its course," and no limitation on preemption would exist in the FEHBA context.  *Id.*

As an initial matter, the Court disagrees with *Kobold* and *Nevils* that a direct and immediate connection must be established between a carrier's demand for reimbursement on the one hand and its payment of plan benefits on the other in order to "relate to . . . coverage or benefits" pursuant to the FEHBA.  No such temporal restriction has been imposed on the term "relate to" in other contexts, including the Employee Retirement Income Security Act of 1974 (ERISA).  Instead, the Supreme Court has determined that the term "relate to" means having "a connection with or reference" to the plan, "even if . . . the effect is only indirect."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

The Statement of Benefits section in Bell's insurance contract generally indicates the existence of a relationship between benefits and subrogation because the carrier's demand for reimbursement is triggered only "[i]f another person or entity . . . causes [the insured] to suffer an injury or illness, and if [the carrier] *paid benefits* for that injury or illness."  *See* Doc. 15, p. 22 (citing Doc. 5-10, p. 138) (emphasis added).  More specifically, the Plan explicitly states on behalf of the carrier: "We are entitled under our right of recovery to be reimbursed for our *benefit payments* even if you are not 'made whole' for

all of your damages in the recoveries that you receive." *Id.* (emphasis added). Finally, any subrogation payments recovered by the carrier are ultimately credited to the Employee Health Benefit Fund of the federal Treasury, and any money left in the Fund is used to reduce the cost or increase *the benefits* provided by the Plan. For all of these reasons, the Court is persuaded that when a carrier's demand for subrogation is separated in time from the carrier's initial payment of benefits, the contractually-defined subrogation rights of the carrier may nonetheless "relate" to the payment of benefits pursuant to the Plan.

Eighth Circuit precedent supports a finding that federal preemption is appropriate. In *MedCenters Health Care v. Ochs*, 26 F.3d 865, 867 (8th Cir. 1994), *overruled in part by Empire*, 547 U.S. 677,[3] the Court of Appeals affirmed the District Court of Minnesota's "well-reasoned opinion" that the FEHBA preempted state law regarding a subrogation provision in an OPM-directed plan. The district court had found that "Minnesota state law is inconsistent with the contractual [subrogation] provision at issue, [and therefore,] the contractual provisions preempt and supersede Minnesota state law." *MedCenters Health Care, Inc. v. Ochs*, 854 F. Supp. 589, 593 (D. Minn. 1993). Later, on appellate review, the Eighth Circuit analyzed the text of the contract at issue and found that it "clearly required

_____

[3] A portion of the Court of Appeals' opinion in *MedCenters* concerning whether subject-matter jurisdiction was proper was overturned by the Supreme Court in *Empire*. The *Empire* court did not, however, overturn the *MedCenters* court's finding that the FEHBA preempted state law, which the Eighth Circuit adopted from the lower-court opinion with little substantive discussion. As discussed above, *Empire* was a subject-matter jurisdiction case. The *Empire* court ruled that the FEHBA's preemption clause could plausibly be interpreted as "relating to" the carrier's postpayment right to reimbursement, thus leaving open the possibility that a subrogation clause in an FEHBA-governed contract could possibly preempt state law. *See Empire*, 547 U.S. at 697-98. Accordingly, as the Eighth Circuit's opinion in *MedCenters* adopted the reasoning of the District Court of Minnesota as to preemption, such has not been overturned and is still binding on this Court.

reimbursement" and that "this approach would best serve the federal interests of uniformity and low premiums." 26 F.3d at 867.  The Supreme Court in *Empire* found that Congress's intent in enacting § 8902(m)(1) of the FEHBA was "[t]o ensure uniform coverage and benefits under plans OPM negotiates for federal employees." 547 U.S. at 686.

Nearly a decade later in *Jacks*, the Eighth Circuit again commented, albeit in dicta, on the propriety of federal preemption in an FEHBA-governed contract.  *See Jacks*, 701 F.3d at 1233.  Though *Jacks* principally concerned the issue of federal subject-matter jurisdiction pursuant to the Federal Officer Removal Statute, the court did state in passing that the subrogation provision of Jacks's plan—which was nearly identical to Bell's Plan—was "necessarily a product of the benefit payment process."  *Id.*  In sum, both the *MedCenters* opinion and the *Jacks* opinion, in combination, tend to persuade this Court that the Eighth Circuit, if faced with the task of interpreting the subrogation provision of the Plan in the instant case, would also find that it "relates to" benefits, and therefore mandates federal preemption of Arkansas law.

Other federal courts have come to the same conclusion.  In reviewing these opinions, the Court finds that they are more persuasive than the state-court opinions in *Kobold* and *Nevils*.  *See, e.g., Calingo v. Meridian Res. Co., LLC*, 2013 WL 1250448, *4 (S.D.N.Y. Feb. 20, 2013) (granting judgment on the pleadings based on a finding that a subrogation provision in an FEHBA-authorized benefit plan relates to benefits); *NALC Health Ben. Plan v. Lunsford*, 879 F. Supp. 760, 763 (E.D. Mich. 1995) (finding that a reimbursement provision in a contract made pursuant to the FEHBA, which "is the exclusive source of a federal employee's compensation rights," preempts any incompatible

-14-

state law) (internal quotation and citation omitted);  *Helfrich v. Blue Cross and Blue Shield Ass'n*, 2014 WL 3845143, *8 (D. Kan. Aug. 5, 2014) (reasoning that allowing the insured to rely on Kansas law and ignore the preemption provisions of her FEHBA-governed contract "would frustrate the congressional purpose" because "[t]he aim of the statute was to provide for a uniform, nationwide interpretation of health insurance plans for all federal employees so that issues such as reimbursement would not vary depending on which state the insured lives").

For these reasons, the Court finds that Arkansas' made-whole doctrine is preempted by the FEHBA's express preemption provision.[4]  Consequently, Defendants BCBS-OK and BCBS-TX's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**.

### III.  CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. 10) is **DENIED**.  The Court has proper subject-matter jurisdiction over this case pursuant to the Federal Officer Removal Statute.  **IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**, as the subrogation provisions in the insurance contract at issue here expressly preempt Arkansas law and therefore control Defendants' claim for subrogation.

This case is accordingly **DISMISSED WITH PREJUDICE**, with judgment to enter contemporaneously with this Order.

---

[4]  In reaching this conclusion, the Court recognizes the potential for harsh and inequitable results.  The preemption provisions of the FEHBA effectively enjoin Bell—and others similarly situated—from making a full recovery for injuries caused by third-party tortfeasors.  Moreover, Defendants' recovery is the result of Bell's time, expense, and work product.  Unfortunately, to this Court's knowledge, there is no body of federal common law to ameliorate these inequities.

**IT IS SO ORDERED** this \_\_\_\_\_ day of November, 2014.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE